UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
KEVIN BROOKS,

                          Petitioner,

         -against-

HAROLD GRAHAM, Superintendent, Auburn
Correctional Facility,

                          Respondent.
-------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

06 Civ. 5418 (BMC)

**COGAN**, District Judge.

I assume familiarity with the facts underlying this petition for a writ of habeas corpus under 28 U.S.C. §2254. The petition raises a single point: that petitioner was denied due process because the prosecution presented a materially inconsistent theory of how the victim died in petitioner's trial as compared to the theory advanced in a co-defendant's separate trial.

The Appellate Division did not discuss the claim at issue here, but held that "defendant's remaining contentions," including the one at issue here, "are without merit." People v. Brooks, 11 A.D.3d 705, 783 N.Y.S.2d 287 (2d Dep't), leave to app. den., 4 N.Y.3d 741, 790 N.Y.S.2d 654 (2004), reconsideration den., 4 N.Y.3d 852, 797 N.Y.S.2d 426 (2005). This constitutes an adjudication on the merits that triggers deferential review under 28 U.S.C. §2254(d). See Sellan v. Kuhlman, 261 F.3d 303, 309 (2d Cir. 2001). Under this standard, petitioner must show that the Appellate Division's decision was contrary to, or an unreasonable application of, Supreme Court decisional authority. See Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). Petitioner does not contend

that the Appellate Division's decision was contrary to any Supreme Court decision; instead, he contends that the Appellate Division unreasonably applied certain Supreme Court decisions, as described below. The issue before me therefore is not whether the Appellate Division erred in concluding that petitioner's due process rights were not violated; it is, rather, whether the Appellate Division unreasonably applied Supreme Court precedent in reaching that conclusion. See Sellan v. Kuhlman, supra.

In opposing this petition, respondent relies in part on Bradshaw v. Stumpf, 545 U.S. 175, 190, 125 S.Ct. 2398, 2409 (2005), which has some bearing. There, after Stumpf pled guilty to capital murder, although he claimed that his co-defendant had actually pulled the trigger, the prosecution argued at the penalty phase that either he had shot the victim himself or that it didn't matter under Ohio's felony murder statute. Stumpf was ultimately sentenced to death. The State then tried petitioner's co-defendant, and based on newly discovered evidence obtained after Stumpf's plea, attempted to pin the actual trigger-pulling on him. Based, *inter alia*, on what he alleged was prosecutorial inconsistency in his sentencing phase and the trial of his co-defendant, Stumpf attempted to withdraw his guilty plea. The Supreme Court rejected the argument.

Respondent here relies particularly on the Supreme Court's reasoning that "the precise identity of the triggerman was immaterial to Stumpf's conviction for aggravated murder." Id. at 187, 125 S.Ct. at 2407. The Supreme Court thus essentially avoided the issue of whether a prosecution's presentation of an inconsistent theory at a co-defendants' trial would violate the Due Process Clause; at most, it found that where the inconsistency concerns an immaterial fact, there is no due process violation.

2

Against the backdrop of Bradshaw, petitioner has two difficulties in making his case here. The first stems from the nature of the Supreme Court precedent on which he relies. The Supreme Court has never held that the prosecution's presentation of inconsistent theories in separate prosecutions arising out of the same incident violates the due process clause – as noted above, the Court specifically avoided deciding that issue in Bradshaw. See id. at 190, 125 S.Ct. at 2409 (Thomas, J., concurring) ("This Court has never hinted, much less held, that the Due Process Clause prevents a State from prosecuting defendants based on inconsistent theories").

With the Supreme Court never having even "hinted" that petitioner has a valid due process claim, and with Bradshaw itself suggesting, if anything, that the Court would reject such a claim, petitioner is forced for his "unreasonable application" argument to rely on very broad Supreme Court pronouncements of unremarkable propositions of law. These include the axiomatic principle that prosecutors cannot use improper methods to obtain a conviction, for which he cites Berger v. United States, 295 U.S. 78, 55 S.Ct. 629 (1935), overruled on other grounds, by Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270 (1960); the equally unchallengeable notion that prosecutors cannot deliberately use false evidence, first set forth in Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173 (1959); and the corollary rule that prosecutors must take steps to correct the record when they use false evidence inadvertently and learn about it later, relying on Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793 (1967). Invocation of each of these authorities would require this Court to assume the point that petitioner must demonstrate, namely, that a prosecutor's advocacy of inconsistent theories constitutes a due process violation. But none of these cases so hold.

Reliance on general principles like those established in the cited Supreme Court cases for an "unreasonable application" argument carries with it increased latitude for the State Court's decision, simply because there is more room for fair argument over their application. "[T]he range of judgments that can be deemed 'reasonable' may vary with the nature of the rule in question." Serrano v. Fischer, 412 F.3d 292, 297 (2d Cir. 2005). "The more general the rule, the more leeway [State] courts have in reaching outcomes in case-by-case determinations." Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140 (2004).

Petitioner's second and ultimately determinative problem is that, although there may be a case in which the use of inconsistent theories of the same crime in separate prosecutions rises to the level of a prosecutor submitting false evidence, this is nowhere near such a case. In Bradshaw, there was no dispute that the prosecutor urged that Stumpf shot the victim in his case and the co-defendant shot the victim in the co-defendant's case; the Supreme Court nevertheless held that since the identity of the shooter was immaterial in Stumpf's case, there was no due process violation. In the instant case, there is plenty of room to argue about whether the theories in the two trials were even inconsistent, and I think the better argument is that they were not. The existence of grounds for fair argument as to whether the prosecutor advanced inconsistent theories in the two trials forecloses a finding that the State Court unreasonably applied Supreme Court precedent. Since Bradshaw found no due process violation where there was an acknowledged inconsistency but the inconsistency was over an immaterial fact, it seems harder to find a due process violation where there is likely no inconsistency at all.

4

To start with, petitioner's co-defendant, Havner, and petitioner were charged with different crimes, i.e., intentional and felony murder, respectively, which have different elements. It was not necessary for the prosecution to prove that petitioner intentionally murdered the victim, only that the murder occurred while he and Havner (together with others) were committing a felony, which was robbing the victim's house. Therefore, at Havner's trial, the prosecution offered the testimony of Sanders, another perpetrator, who was in the room with the victim and Havner, to the effect that Havner had sat on the victim's face with a pillow after petitioner had duct taped her face. This was to show that Havner intentionally caused the victim's death. The jury agreed and convicted her. At petitioner's trial, the prosecution did not introduce evidence as to Havner's use of the pillow because it was not material to whether petitioner was committing the robbery while the murder was happening, which is all the prosecution had to show. The prosecution did put into evidence the facts concerning petitioner's duct taping of the victim's face to show his involvement in the robbery, but did not present evidence nor argue that the victim had suffocated solely because of the duct tape.

Similarly, the medical examiner at petitioner's trial testified only that the victim had died from suffocation. This was not inconsistent with his testimony at Havner's trial that the victim died of suffocation from the duct tape, the pillow, or both. It would have been easy enough for petitioner's counsel to cross-examine the medical expert by asking, "Didn't you testify at Havner's trial that it might have been the pillow that caused her death? Wasn't Havner in fact convicted of causing her death?" Petitioner's defense counsel chose not to cross-examine the medical examiner in this manner. In fact, neither side brought out Havner's use of the pillow because the cause of death was immaterial to

5

the felony murder charge against petitioner; it simply did not matter at petitioner's trial whether he or Havner, or both, caused the victim's death.

What petitioner is essentially arguing is that by not putting into evidence Havner's use of the pillow, the prosecutor gave the jury no choice but to think that it was petitioner's application of the duct tape that caused the victim's death. Petitioner argues that this rises to the level of deceptive conduct by the prosecutor because she knew that Havner's use of the pillow had been found by another jury to have caused, either by itself or with petitioner's duct tape, the victim's death. But it is not at all clear, and, again, we are dealing with an "unreasonable application" standard, that leaving out evidence of an immaterial fact at one defendant's trial is the equivalent of advancing an "inconsistent theory," just because that fact was put in at another defendant's trial where the evidence, because there was a different charge, was highly material. Petitioner's theory of prosecutorial misconduct by omission of immaterial evidence, at the very least, would raise the obligation of a prosecutor to do justice beyond that imposed by any of the Supreme Court cases upon which petitioner relies.

In addition, petitioner's characterization of the evidence as necessarily leading to the conclusion that he caused the murder is inaccurate. Both in evidence and argument, the prosecutor's case did not require a finding that the duct tape had suffocated the victim.

At petitioner's trial, the prosecution's direct examination of Robinson, another of petitioner's co-perpetrators who also participated in the felony murder, tended to exonerate petitioner from actually causing the death, and pinned it on Havner and Sanders. Robinson testified that he and another perpetrator, Thomas, were downstairs

robbing the house while petitioner, Sanders, and Havner were upstairs with the victim. Robinson testified that petitioner came downstairs and said to Robinson and Thomas, "they [Havner and Sanders] are killing her." Robinson and Thomas told petitioner to stop them, at which point he went back upstairs, came down a few minutes later and said it was "too late" because "I think she's already dead." In addition, the prosecution put in petitioner's statement to the police, in which he relayed a conversation he had with the victim after he taped her face, showing that she could speak. Putting aside the immateriality of the issue, these facts could have led the jury to conclude that the victim did not die solely from the duct tape, if at all, but rather from something that Havner and/or Sanders had done to her.

The prosecutor was equally clear in closing argument that it did not matter whether petitioner or someone else had killed the victim. The focus of the argument was that petitioner had been involved in the robbery and that the victim had been killed during it, not that petitioner had killed the victim:

> [T]his case can be broken down into three basic questions. And the first basic question is, what crimes were committed on that night? Was the house burglarized? Was the property taken by force? Did Tracie Harrison die during the course of having her house burglarized and her property being taken by force and then was the house burnt? ...
>
> The second question ... would be whether or not this defendant, Kevin Brooks, acting in concert with others – *remember he is being charged with acting in concert. He does not have to commit every act himself.* The Court will instruct you on how you can be held responsible for the acts of the others that he was acting with. So was he acting in concert with the others? *Did he commit the crimes of robbery, burglary, and arson?*
>
> And the last question would be, and did Tracie Harrison die during the course of these defendants acting together with the others? Okay, Kevin Brooks acting together with the others to commit the crimes of burglary and robbery while feeling therefrom.

7

(Emphasis added.) There was of course no jury charge on intentional murder, and the jury was never asked to determine whether petitioner's duct taping of the victim caused her death; indeed, they did not even need to find under the charge that he had duct taped her at all to find him guilty.

The trial judge, who had apparently also presided over the Havner trial, identified the risk of inconsistent theories to the prosecutor early in the case and took immediate steps to eliminate the potential. During testimony on the first day of the trial, he very patiently explained to the prosecutor that the prosecutor would not be permitted to offer evidence or argue that it was the tape rather than the pillow that caused the victim's death, because the prosecutor had argued in the Havner trial that it was Havner's use of the pillow that was responsible. Based on the substance of the lengthy colloquy on this issue, petitioner may have a point that until the trial judge took this initiative, it may have been the prosecutor's intent to argue that the duct tape caused the suffocation, as the prosecutor initially did not seem to fully grasp the trial judge's point. However, the trial judge was adamant that he would not allow inconsistent theories, and as shown above, the prosecutor fully complied with the judge's ruling.

Because the trial judge nipped this problem in the bud, petitioner is forced to argue in reply that if the prosecutor had introduced the pillow evidence, the jury might have found that the murder occurred after the felony with which petitioner was charged. This point essentially devolves into a "weight of the evidence" argument. Petitioner relies on evidence showing that, after the robbery when petitioner and the other perpetrators left, Sanders and Havner alone returned to the house and burned it down to cover the crime. Petitioner speculates that perhaps it was during this return visit that

8

Havner smothered the victim, and if so, petitioner would not be guilty of felony murder because the return to the house after the robbery was a different felony than that with which he was charged. However, not only is this theory speculative, but the evidence in the record refutes it. Petitioner's statements to Robinson that "I think they're killing her," and, after being told to stop, saying that it was "too late" because "I think she's dead" was adequate proof to show that the victim died during the felony in which petitioner was participating. Petitioner's assertion that Robinson's testimony was an inadequate basis for this conclusion is no more than taking issue with the jury's conclusion that it was.

Both sides rely on appellate decisions outside the Second Circuit for their respective positions. None of the cases upon which petitioner relies were decided under the AEDPA, see Smith v. Groose, 205 F.3d 1045 (8th Cir. 2000); Thompson v. Calderon, 120 F.3d 1045 (9th Cir. 1997) (en banc), rev'd on other grounds, 523 U.S. 538, 118 S.Ct. 1489 (1998); State v. Gates, 826 So.2d 1064 (Fla. App. 2002), and the Appellate Division of course is not obligated to reasonably apply non-Supreme Court authority. In any event, the cases cited by respondent are more analogous to the instant case, see e.g., Nguyen v. Lindsey, 232 F.3d 1236, 1240 (9th Cir. 2000), and show, at the very least, that even assuming arguendo that inconsistent theories in two trials can violate the due process clause, it is not an unreasonable application of those Supreme Court cases condemning prosecutorial misconduct when there exists a strong argument that the theories were not in fact inconsistent.

There may come a case in this Circuit where the use of two diametrically opposing theories of the case gives rise to a due process claim, but considering the particular facts of this case, this is not it.

## CONCLUSION

The petition is denied. The Clerk is directed to enter judgment in favor of Respondent. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability shall not issue. 28 U.S.C. §2253(b)(2).

**SO ORDERED.**

/Signed by Brian M. Cogan/
U.S.D.J.

Dated: Brooklyn, New York
August 13, 2007